And our last case for argument this morning is United States v. Wolfgang Von Vader. Ms. Hogarth. May it please the court, Sarah Hogarth for the appellant Wolfgang Von Vader. This case is about a massive institutional failure that left one man in prison for years longer than he should be, while relief was secured for all similarly situated inmates. This appeal presents the narrow legal question whether a district court can consider such a circumstance to be an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. section 3582c1a. So Ms. Hogarth, your basic argument is plain meaning, am I correct? That's correct, yes. The text of section 3582c1a looks for an extraordinary and compelling reason warranting a sentence reduction. And the district court below thought it was foreclosed from considering this institutional failure to be an extraordinary and compelling reason based on cases from this court that have found that things like non-retroactive statutory changes in sentencing law or incremental judicial decisions are not extraordinary and compelling. They're the ordinary business of the legal system. Mr. Von Vader's case is not foreclosed by that rule and is different in kind. I don't understand that argument.  And Thacker said the reason it was articulating its limits was to prevent the release statute from being used as a way to get around the specific limits in 2255. Right? And that's exactly how you're trying to use compassionate release here, to get around one of the limits in 2255. It seems to me that brings you squarely within the scope of Thacker. Now I could understand an argument that Thacker should be overruled, though more recent cases in this circuit seem quite consistent with Thacker. But as you can see, I'm having a lot of trouble seeing how your position could be reconciled with Thacker. So I understand. And Thacker specifically said its holding was limited. And the idea there was that the change that Congress had made in the sentencing statute was perspective only. And so that would be no inmate would be allowed to use that as a ground for relief. So I think Thacker was looking at something very different. And the additional layer we have on top of that here is that there was a large institutional effort to identify all of these people. I know you distinguish the facts of Thacker. I'm talking about the rationale of Thacker. Well, and I don't think this is an end run around habeas in the context of this case, because the argument that Mr. Von Bader is raising is not one that would have been grounds for relief in a section 2255 petition. What do you do with the D.C. Circuit's recent pronouncement in Jenkins? They pretty much reject your position, don't they? I'm not specifically aware of the case, but I'm happy to discuss it. Well, they basically take the position that Judge Easterbrook just articulated, as I understand the court, that you simply can't use this statute as an end run around the habeas arrangement that has developed statutorily in the courts to win 2255 and 2241. And I think this court has also said that errors can't be used as an end run, and they did so in the context of assessing what the words extraordinary and compelling mean. And when there is an avenue for relief based on the argument you're making, it's not extraordinary and compelling to have missed that. Could I ask you, how did this statute come about? When was it enacted? Was it part of a larger legislative package? Sorry, which one are you referring to? The statute which you're asking us to interpret. So 18 U.S.C. 3582 C1A was enacted in the 1980s. At that time, only the Bureau of Prisons could file these motions. And then so the change in 2018 was that prisoners could now file them on their own behalf. But the text dates back to the 1980s. They're not quite complete because the text as enacted says that release depends on guidelines by the Sentencing Commission. The Sentencing Commission didn't have a quorum in 2018. So there aren't any separate guidelines for prisoner-initiated applications. But we have said that the guidelines for Bureau of Prisons-initiated applications still should inform the district judge's discretion. So if you apply those guidelines, even though they're not statutorily required yet until the Sentencing Commission gets around it, how does that affect your position? The guidelines that were enacted even before the change in the law, they don't foreclose the ability of a court to consider. Yeah, don't foreclose isn't really helpful. Is there anything in those guidelines that gives your request here any support? Well, they essentially parrot the statute, at least the guideline that is applicable to this request for release. I take it that the answer is no. Well, it's a catch-all, defining extraordinary and compelling, and so the question is to define that word. So no, there's nothing specific, but there's also nothing the other way that wouldn't allow a court to evaluate the circumstances holistically, which is all that we have asked here. Have you looked at all the legislative history of this section? From the 1980s? I don't have that immediately at hand. No, because I think the text of the statute, and courts have said this, it's that extraordinary and compelling are the words to be used to evaluate. No, we're here trying to figure out what those words mean, though, and why can't we look at the committee report as to what they mean? I think that you could, to the extent that you find the text to be unclear, but the words extraordinary and compelling have an ordinary meaning, and judges often apply those words in other contexts, and so that's primarily what we're relying on is what is something that's extraordinary and compelling, and here it was a massive institutional failure to have secured this relief for him six years ago. I read the district court's administrative order. How was there a massive institutional failure? I mean, what in that report or that administrative order lulled your client into thinking he didn't have to go ahead and file? Well, so what happened is that the Sentencing Commission partnered with other agencies to create lists of people who were eligible for relief in the wake of Johnson, and so they found these lists and then were able to send them to agencies to identify eligible people for relief without them even needing to have filed their own pro se petition and work this all out. So that itself was an extraordinary response. And that was a gratuitous effort by the Sentencing Commission to assist federal defenders' offices that wanted that assistance, but there's no right to counsel at 2255. The federal defenders were not obligated to do anything at all, so this discussion of a massive institutional failure or this massive multi-agency task force engaged in this exercise, that was completely gratuitous, so the hue and cry in your briefs about how your client was left out of that ring hollow because nobody was entitled to that. And it didn't excuse prisoners from filing their own 2255 motions based on Johnson to the extent they thought they had a Johnson-based argument within a year of the case. But I think that underscores what makes this so extraordinary is that all these agencies did decide to do this. They don't normally do that, and so to have missed one person is where you start to get to something. You're missing my point, counsel. What the federal defenders' office in Wisconsin did in conjunction with lists provided by the Sentencing Commission didn't excuse the prisoners who had comparable Johnson-based arguments from filing their own motions. So what you're trying to do is use a compassionate release motion under 3582 to excuse your client's failure to file a timely 2255 within a year of Johnson to the extent that he thought and still thinks that he has a Johnson-based argument for lifting the career offender guideline and getting resentencing. Again, I don't think that we're trying to use it as an end run. This is an equitable statute that asks what's extraordinary and compelling, and we submit that the district court erred in saying he was foreclosed for considering it, and I will reserve my six seconds. Thank you. Is it Stellis? Good morning. Megan Stellis on behalf of the United States. Congress limited the availability of collateral review, including for sentencing errors that were made clear by later judicial decisions. Compassionate release motions cannot be used to end run around those limits. The district court correctly recognized this principle. Well, I don't know that that's true as a matter of first principles. The Sentencing Commission is considering issuing new guidelines for the statute. Are you saying it would be a violation of the statute if the Sentencing Commission disagrees with Thacker and authorizes compassionate relief under Thacker-like circumstances or these kinds of circumstances? I think it would run into the habeas channeling rule that when you're challenging a sentencing error, you need to do so with— Well, it would contradict the rationale of Thacker. That's perfectly clear. My question is, do you think it would be—well, such a regulation by the Sentencing Commission would be invalid, right? The statute says extraordinary circumstances, and we have tried to define extraordinary circumstances in the absence of guidance from the Sentencing Commission. Thacker is such an attempt. Are you saying that the Sentencing Commission cannot, is legally prohibited from disagreeing with Thacker and authorizing challenges like this one? I don't know the answer to that, but if I may refer to Jenkins, even though it wasn't cited in my brief because the court brought it up. That talked about, is that permissible? May I have permission to do that?  I think it would run afoul of the habeas channeling rule, which is— Well, if you think it's running afoul of something, it sounds like you're saying they can't. It will be interesting to see what the commission does. Yes, and if I could pick up on a question that you asked, Ms. Hogarth, which was, given that the Sentencing Commission has not issued a guideline applicable to prisoner-initiated release motions, is there any support in 1B.1.13, given that it only applies by its terms to Bureau of Prisons-initiated motions? And the answer to that is no. The reasons that the guideline already discusses as extraordinary and compelling are personal reasons, like age, terminal illness, a family emergency. None of these things are in the same category as a sentencing error that could be raised on a 2255. And they're also not within—a sentencing error is unlike the type of argument that Von Vader is making here, because the Bureau of Prisons doesn't have any type of institutional expertise to raise these types of sentencing errors. The Bureau of Prisons is looking at whether a prisoner should be released from prison for personal, sympathetic reasons. That word actually appears in the legislative history, I believe. Personal reasons. Have you looked at the legislative history? I have not. Have you looked at the history of the statute itself, the wording of the statute? How did this wording—where did this wording come from? When was it inserted in the U.S. Code? What was Congress trying to do with this? I've not looked at it beyond the observation that it predated the First Step Act, which allowed prisoners— Oh, it did, yes. By a good number of years. My point is, what was Congress trying to accomplish several decades ago when it inserted this statute? And I have not looked at the legislative history, but I think the meaning of the subdivision discussing extraordinary and compelling reasons can be informed by the reasons that immediately precede it, which are these personal, sympathetic reasons that allow someone to be released from prison. Two terms ago, Justice Gorsuch said that we really ought to look at the history of the wording, see where the wording comes from, why it was inserted. That is missing from both sides' briefs here, and I think it's illuminating. Thanks. You raised a mootness argument, which ordinarily comes before merits discussions, and I haven't heard that argument yet, so perhaps you'd like to address that. Mr. von Vader is no longer serving his Wisconsin sentence. He's completed it and is now serving his Kansas sentence. That's right, and to clarify a point from Mr. von Vader's reply, we don't contend that if the Western District of Wisconsin were to shorten his completed sentence, that that would be reflected in the BOP's aggregation. Our argument is that the Western District of Wisconsin doesn't have authority to shorten the completed sentence in the first place. It sounds like an argument about the meaning of the statute rather than about mootness, in other words, that the applicant loses on the merits because the judge doesn't have authority to grant the relief requested. If the judge doesn't have the authority to do that. The fact that you lose on the merits doesn't make a case moot. When a case is over and the judge says to the plaintiff, your view of the meaning of the statute is incorrect, you lose, the judge doesn't then say, and therefore the case is moot. The judge says you lose because the statute doesn't support you. But if the judge doesn't have the authority to consider that question. That's just to say you lose, right? You file a lawsuit, the statute of limitations is two years. You file the lawsuit after three years. Is that lawsuit moot because you're going to lose it? No. This is bell against hood, right? It's a fundamental rule of federal jurisdiction, that losing on the merits doesn't destroy jurisdiction. This goes back to the point I mentioned a few moments ago, that if the Western District of Wisconsin could shorten the completed sentence, he would have a lower aggregated term. But because the court doesn't have the power to do that, it would be, it's moot. The court can't grant effective relief for him because it can't be revisiting. It can't do it consistently with your view of the meaning of the statute. Yes, and it can't also do it as a matter of comedy with the district court in Kansas. Von Vader filed a compassionate release motion there. I think your argument perhaps is better stated as he's no longer in custody pursuant to the sentence that's being challenged. Yes. He's in custody pursuant to a different sentence by a different court. So he's no longer, the Wisconsin court has done the case. Exactly. And so I think that's perhaps a better focus for your mootness argument. I'm not sure. I don't want to make your arguments for you, but that's how I understood it. That's how I understand it too. And that's distinct from whether the sentence is aggregated for administrative purposes. It's not aggregated for purposes of a judicial decision. And, yes, he's not in custody of the Western District of Wisconsin's conviction anymore. So a reduced sentence if he's no longer a career offender based on a Johnson-based argument. Let's assume success on all of the different steps in the merits process that would get him there. And his sentence were reduced. He would not get credit for the excess time that he served on the Wisconsin sentence against his Kansas sentence. I don't know exactly how the sentence computation would work. I think it depends on when the term started and how much the reduction would be. I thought it depends on when the arrest for the crime occurs. Yes. Excuse me. But BOP will recognize the Western District of Wisconsin's order if it somehow shortened this sentence even though it was completed, whether that's through sentence credit or aggregation. Then it's not a mootness argument because if relief would be of some benefit to him, the mootness argument is that relief can't be of any benefit to him because his sentence is done. It's in the past. It can't be undone. It's both. And that's administrative purposes. BOP's administrative purposes are on one side of the house, and judicial decisions are on the other. And my argument is that we don't get to what the BOP would do with any sort of reduced sentence because the Western District of Wisconsin cannot reduce his completed sentence. What about supervised release? Von Vader doesn't need a ruling on a compassionate release motion to move for a reduction of the supervised release term. That's an insufficient reason to keep the case alive. We said something different in the Pope case. Is that still good law? After a recent decision, I think, called Watkins? I'm not prepared to address that today, but I'd be happy to submit a letter if it would be helpful to the court. We'll let you know. Thank you. Thanks. Ms. Hogarth, your time had almost expired. You can have extra time if you've got something to say in rebuttal. Sure. I just wanted to make two quick points. The first is under the guideline 1B1.13, which is what would be applicable to BOP filed motions. All it says is that extraordinary and compelling reasons warrant the reduction, which parents the statute, and then also includes that the defendant is not a danger to the safety of any other person or to the community, which I believe has been established through our various descriptions of Mr. Von Bader's rehabilitation. So I do think that that guideline supports what we're doing here. And then one final point, again, is that the habeas channel channeling rule from these courts cases was interpreting what extraordinary and compelling might be. And I just want to reiterate that this is a very different circumstance from an ordinary error that might have occurred and that this is an extraordinary and compelling. Well, your basic argument is that there was a sentencing error based on intervening law, that being Johnson, right? So it is a sentencing error argument. It's really that he should have had an institutional actor help him get the relief six years ago. Based on a sentencing error. So it's a sentencing error argument. Well, it's not a sentencing error alone, and that's what I just want to emphasize from this court's cases, that it's been a sentencing error alone, and this is something more. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement. And that concludes our calendar today. The court will be in recess.